## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>OMNICITY, INC.,<br><br>    Debtor. | Chapter 11<br><br>Case No. 11-12303-JKC-11 |

### OBJECTION OF AGILITY LEASE-FUND-II, LLC TO
### MOTION OF DEBTOR FOR AUTHORIZATION TO USE CASH COLLATERAL, AND
### TO SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

    This Objection is filed by Agility Lease Fund II, LLC ("Agility") with respect to the "Motion of Debtor for Authorization to Use Cash Collateral, and to Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001" [Docket No. 43] (the "Motion") filed by Omnicity, Inc., the debtor and debtor-in-possession (the "Debtor") in the above-captioned, Chapter 11 case (the "Bankruptcy Case").  In the Motion, the Debtor requests that the Court enter an order authorizing the Debtor's use of cash collateral.

    Although the Debtor previously stipulated to the validity of Agility's security interest in cash collateral,[1] the Motion does not mention Agility or propose adequate protection of Agility's lien in cash collateral.  Further, based on the proposed budget attached to the Motion (the "Budget"), the Debtor does not propose to make any lease payments to Agility through April of 2012, in violation of 11 U.S.C. § 365(d)(5).  Finally, there are issues on whether certain expenses reflected in the Budget are reasonable and necessary.  Accordingly, the Motion should be denied, unless the concerns raised in this Objection are addressed as provided below.

---

[1] *See* "Agreed Interim Order Authorizing Use of Cash Collateral and Granting Replacement Liens" [Docket No. 13], at page 2.

QB\14881181.3

In support of this Objection, Agility states as follows:

## I.     BACKGROUND.

1. On September 29, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Code, thereby commencing the Bankruptcy Case.

### The Master Lease

2. The Debtor is in the business of delivering wireless broadband services to rural communities and counties in the Midwest.

3. The Debtor is the lessee of Agility pursuant to a Master Lease Agreement #22-124, dated as of December 24, 2008 (the "Master Lease").

4. Pursuant to the Master Lease and supporting "Schedules", Agility leases to the Debtor an array of broadband networking and related equipment (the "Leased Equipment") necessary for the Debtor to deliver its broadband services to its customers.

5. The Debtor's obligations under the Master Lease are secured by (among other things) a Security Agreement, dated as of December 24, 2008 (the "Security Agreement") granting Agility a lien and security interest in and to the collateral described therein, including, without limitation, accounts, equipment, property, goods and all proceeds of same (collectively, the "Collateral").

6. To perfect its interest in the Collateral, Agility filed a UCC Financing Statement with the Indiana Secretary of State's office at File No. 36268341 (as amended, modified or subsequently assigned, the "UCC-1").

7. Agility's interest in the Cash Collateral is also protected by a Blocked Account Control Agreement with M&I Bank dated November 30, 2008, and modified pursuant to the Addendum to Blocked Account Agreement, dated as of December 24, 2008 (collectively, the "Blocked Account Agreement"). All documents (including, without limitation, any exhibits, lists of equipment, agreements or security instruments) related to the Master Lease, the Schedules, the Security Agreement, the UCC-1, and the Blocked Account Agreement,

hereinafter, the "Lease and Security Documents". True and correct copies of Lease and Security Documents are attached as exhibits to the "Motion by Agility Lease Fund II, LLC to Compel the Assumption or Rejection of Leases" [Docket No. 39] (the "Motion to Compel"), which is pending before the Court.

8. Pursuant to the Lease and Security Documents, Agility is entitled to receive (among other things) monthly payments in the amount of $30,003.66.

9. The Debtor is in default of its obligations under the Lease and Security Documents for, among other things, failing to make payment due and owing to Agility thereunder from September 2011 and thereafter.

10. The Debtor continues to use the Leased Equipment owned by Agility to conduct its operations, and based on the Budget, the Debtor plans to continue to use the Leased Equipment to generate revenues.

11. Upon information and belief, without the use of the Leased Equipment the Debtor will be unable to deliver its broadband services to its customers.

## Prior Cash Collateral Proceedings

12. On the Petition Date, the Debtor filed the "First Day Motion of Debtor for Authorization to Use Cash Collateral, and to Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001" [Docket No. 3] (the "Initial Cash Collateral Motion").

13. The Court initially granted the Initial Cash Collateral Motion and entered the "Agreed Interim Order Authorizing Use of Cash Collateral and Granting Replacement Liens" [Docket No. 13] (the "Interim Cash Collateral Order").

14. Pursuant to the Interim Cash Collateral Order, (i) the Debtor stipulated to (among other things) the validity and perfection of Agility's pre-petition liens in Collateral that is cash collateral under the Bankruptcy Code (hereafter, "Cash Collateral"); (ii) the Debtor acknowledged the effectiveness of the agreements between the Debtor and Agility; and (iii) Agility was granted "valid and perfected first priority security interests and liens . . in all of the Debtor's post-petition assets of the type described as collateral in the agreements between the

[Debtor and Agility], including, without limitation, all of the Debtor's post-petition accounts, and all cash contained in deposit accounts." *See* Interim Cash Collateral Order, at page 3.

15. The Interim Cash Collateral Order further provides that the "continuing Replacement Liens held by or granted to Agility: will secure the pre-petition indebtedness, including without limitation, the principal, interest, costs and expenses incurred in connection therewith which Debtor owes Agility." *Id.*

16. On October 14, 2011, the Court held a continued hearing on cash collateral. The day prior to that hearing, Agility learned that Star Financial Bank ("Star") asserts a first priority lien in the Debtor's accounts and other Cash Collateral.

17. At the October 14, 2011 hearing, the Court denied the Initial Cash Collateral Motion and ordered the Debtor to file a new motion and to request a hearing.

### The Pending Cash Collateral Motion

18. On October 18, 2011, the Debtor filed the Motion, requesting authority to use Cash Collateral according to the proposed Budget attached to the Motion.

19. Despite Agility's previously stipulated lien interest in Cash Collateral, the Debtor proposes in the Motion to provide adequate protection only to Star, and not to Agility.[2]

20. In addition to seeking authority to use Cash Collateral though the Motion, the Debtor is also apparently seeking authority to receive post-petition financing from Star. *See* Motion at page 2. However, the terms of any such financing are not clear from the Motion or the Budget. In the Motion, the Debtor states: "This financing is essentially the use of cash collateral generated by the collection of ordinary course operational revenue and the use of its operating accounts, and does not require Star to advance new sums to the Debtor post-petition." *Id.* Nevertheless, the Budget appears to rely upon additional post-petition financing as a source of cash for October 2011. *See* Line Items 1939 and 1940 (showing as sources of cash for October

---

[2] Agility reserves all of its rights under the Interim Cash Collateral Order with respect to the protections granted Agility thereunder, including without limitation the replacement liens.

2011 "DIP Financing" in the amount of $70,000.00, and "Reclaimed Cash and DIP Fina" (sic) in the amount of $30,000.00, with no further explanation).

21. As an additional source of cash, the Budget refers to "Common Stock Sales" totaling $500,000.00 through April 2011. No explanation is provided for the basis for these stock sales.

22. The Budget includes certain questionable expenses as well.
- Payments to Debtor's counsel in excess of $10,000 per month through the end of 2011, and $1,500 per month thereafter, using Cash Collateral. *See* Budget, Line Item 1834;
- Expenses of $3,000 per month budgeted for travel and entertainment. *See* Budget, Line Items 1848 and 1849;
- $52,000 budgeted for "Accounting" through April 2012. *See* Line Item 1835.

23. Despite the Debtor's obligations under the Lease and 11 U.S.C. § 365(d)(5), the Debtor does not propose to make any Lease payments to Agility through April 2012. *See* Budget, Line Item 1808. At the same time, the Debtor proposes to use Cash Collateral to make monthly principal and interest payments to Star of $5,000. *See* Budget, Line Items 1898 and 1931.

24. A hearing on the Motion has been scheduled on October 26, 2011.

### Requests For Historical Financial Information

25. Agility has repeatedly requested, through Debtors' counsel, historical financial information relating to the Debtor's business operations, including income statements for the 90 days prior to the Petition Date, general ledgers, bank statements, and check registers, among other documents. The Debtor has not provided these documents.

### III. ARGUMENT.

Under Bankruptcy Code § 363(c)(2), the Debtor may not use Agility's Cash Collateral unless: (i) Agility consents to such use; or (ii) the Court enters an order authorizing

the use of the Cash Collateral in accordance with the provisions of Bankruptcy Code § 363. *See* Bankruptcy Code § 363(c)(2). Bankruptcy Code § 363(c)(4) also requires the Debtor to segregate and account for any Cash Collateral in its possession, custody, or control. *See* Bankruptcy Code § 363(c)(4).

Under Bankruptcy Code § 363(e), the Debtor cannot use Agility's Cash Collateral unless the Debtor adequately protects Agility's interest in the Cash Collateral. See Bankruptcy Code §363(e); *Cf.* Precision Indus. v. Qualitech Steel SBQ, 327 F.3d 537, 547-48 (7th Cir. 2003). The Debtor bears the burden of establishing that Agility's interests are being adequately protected. See Bankruptcy Code § 363(p)(1). To meet this burden, the Debtor must produce evidence showing that its use of the Cash Collateral will not reduce the value of Agility's interest in the Cash Collateral (and its other collateral) without providing adequate protection. See, e.g., In re Glasstream Boats, Inc., 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990).

### Objections To the Debtors' Proposed Use Of Cash Collateral

Agility has at least the following concerns regarding the Debtor's proposed use of its Cash Collateral:

1. The Debtor proposes to use Agility's Cash Collateral without adequately protecting Agility's interests. Any order authorizing the Debtor's use of Cash Collateral should, at a minimum, either (i) grant Agility replacement liens to the same extent and of the same priority as the liens Agility held in pre-petition Collateral; or (ii) confirm that the replacement liens granted in the Interim Cash Collateral Order are continuing and are valid, notwithstanding the Court's denial of the Initial Cash Collateral Motion.

2. The Budget should be modified, among other things, to include payments to Agility under the Master Lease in accordance with 11 U.S.C. § 365(d)(5). Pursuant to 11 U.S.C. § 365(d)(5), the Debtor must "timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief . . . under an unexpired lease of personal property, until such lease is assumed or rejected . . ."

The date that is 60 days after the Petition Date is November 28, 2011. Thus, the Debtor must either reject the Master Lease, or begin making payments due under the Master Lease beginning on December 1, 2011. It is clear from the Budget (which includes continuing revenues generated using the Leased Equipment), that the Debtor proposes to continue using the Leased Equipment after November 28, 2011, and through and including at least, April 2012. Accordingly, the Budget must be modified to provide for full payments, totaling approximately $30,003.66 monthly, beginning in December 2011, at the latest.[3]

3.  <u>The terms of any proposed DIP Financing arrangement between Debtor and Star must be disclosed</u>. Agility has spoken with Counsel for the Debtor who confirmed that the Debtor is not seeking to create a new debtor-in-possession financing arrangement with Star in connection with the Motion. To the extent the Debtor proposes in the future to obtain such financing, the terms should be disclosed.

4.  <u>The Debtor should not use Cash Collateral to pay estate professional fees</u>.

**REMAINDER OF PAGE BLANK**

---

[3] The Debtor has not sought a reprieve from enforcement of 11 U.S.C. § 365(d)(5) based upon the equities of the case. However, to the extent it does so, the equities do not favor granting the Debtor such a reprieve, particularly where the Debtor's own Budget shows positive monthly cash flow in excess of $40,000 from January 2012 and thereafter. *See* Budget, at line 1888.

## IV.     CONCLUSION.

Agility and Debtor's counsel have spoken regarding Agility's concerns raised herein, and are working toward a consensual order.  However, unless the objections raised by Agility are addressed, Agility respectfully requests that the Court deny the Debtors' Motion for use of cash collateral, and grant such other and further relief as is just and proper.

DATED this 24th day of October, 2011.

        QUARLES & BRADY LLP
        Renaissance One
        Two North Central Avenue
        Phoenix, AZ  85004-2391


By  /s/ Walter J. Ashbrook
    Robert P. Harris
    *admitted pro hac vice*
    Walter J. Ashbrook
    *admitted pro hac vice*

Attorneys for Agility Lease Fund-II, LLC

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a copy of the foregoing was filed using the Court's CM/ECF system and parties will be served via such system as follows:

KC Cohen
151 N. Delaware Street, Suite 1104
Indianapolis, IN  46204
Email: kc@esoft-legal.com
Attorney for Debtor

Joseph F. McGonigal
Office of the U.S. Trustee
101 W. Ohio Street, Suite 1000
Indianapolis, IN  46204
Email: joe.mcgonigal@usdoj.gov

Jeremy L. Fetty
Parr Richey Obremskey Frandsen & Patierson LLP
225 West Main Street
Post Office Box 668
Lebanon, IN  46052
Email: jfetty@parrlaw.com
Attorneys for Wabash County Rural Electric
Membership Corporation

Linda Boyle
TW Telecom Inc.
10475 Park Meadows Drive, Suite 400
Littleton, CO  80124
Email: linda.boyle@twtelecom.com

Jeffrey A. Brauer
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
Email: jabrauer@hahnlaw.com
Attorneys for Crown Castle South LLC

Eric C. Redman
151 N. Delaware Street, Suite 1106
Indianapolis, IN  46204
Email: eredman@redmanludwig.com
Attorneys for Star Financial Bank

                                                  /s/ Walter J. Ashbrook
                                                    Walter J. Ashbrook